1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

9 STEVEN EILERMAN, individually and on
behalf of all other similarly situated,
10                    Plaintiff,                    NO.:

11 v.                                              **DEFENDANT'S NOTICE OF REMOVAL
                                                  OF CIVIL ACTION**
12 MCLANE COMPANY, INC. DBA
MCLANE/NORTHWEST, a Washington
13 corporation,

14                    Defendant.

15          Pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act or "CAFA"), 28

16 U.S.C. § 1441 *et. seq.* and 28 U.S.C. § 1446 *et. seq.,* Defendant McLane Company, Inc. dba

17 McLane/Northwest ("Defendant") removes the above-captioned action from the Superior

18 Court of Washington for Pierce County to this Court on the ground of original jurisdiction

19 based on CAFA.  The following statement is submitted in accordance with 28 U.S.C. § 1446:

20                    **I.       STATEMENT OF JURISDICTION**

21          1.       CAFA grants federal district courts original jurisdiction over civil class action

22 lawsuits filed under federal or state law in which any member of a putative class of plaintiffs

23 is a citizen of a state different from any defendant, and where the matter in controversy

24 exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d).

25          2.       There is no presumption against removal under CAFA.  *Dart Cherokee Basin*

26 *Operating Co., LLC v. Owens*, 135 S.Ct. 547, 550, 554 (2014) ("no antiremoval presumption

27 attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain

28 class actions in federal court").  To the contrary, "CAFA's 'provisions should be read broadly,

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 1

1    with a strong preference that interstate class actions should be heard in federal court if

2    properly removed by any defendant.'" *Id.* at 554, *quoting* S. Rep. No. 109-14, p. 43 (2005)).

3          3.     Removal to this Court is proper because the action was filed and is pending in

4    the Superior Court of Washington for Pierce County, which is within this judicial district.  28

5    U.S.C. §§ 128(b) and § 1446(a).

6          4.     As set forth below, this Court has jurisdiction over this case under CAFA, and

7    this case may be removed to this Court pursuant to 28 U.S.C. § 1441(a), because:  (1) the

8    proposed class contains more than 100 members; (2) Defendant is not a state, state official or

9    other governmental entity; (3) the total amount in controversy for all class members exceeds

10   $5,000,000; (4) there is diversity between at least one class member and Defendant; and (5)

11   this case is being timely and properly removed by the filing of this Notice.

12   **II.      STATUS OF PLEADINGS**

13         5.     On or about March 17, 2016, Plaintiff Steven Eilerman ("Plaintiff") filed a

14   Complaint in the Superior Court of Washington for Pierce County, entitled *Steven Eilerman,*

15   *individually and on behalf of all others similarly situated, v. McLane Company, Inc. dba*

16   *McLane/Northwest, a Washington Corporation,* Case Number 16-2-06259-3 (the "State

17   Court Action"), a true and correct copy of which is attached hereto as Exhibit A.

18         6.     On or about March 24, 2016, Defendant's registered agent for service of

19   process was personally served with a copy of the Summons and Complaint.  *See* Exhibit A.

20   The only other process, pleading and order served on Defendant are the Summons and Order

21   Assigning Case to Judicial Department and Setting Review Hearing Date, which are attached

22   hereto as Exhibits B and C, respectively.

23         7.     Defendant is informed and believes that the only additional documents that

24   are on file in the State Court Action are the Case Information Cover Sheet,

25   Affidavit/Declaration of Service and Defendant's Notice of Appearance, which are attached

26   hereto as Exhibits D, E and F, respectively.

27         8.     Defendant is the only defendant in the State Court Action.  As such, there are

28   no unserved defendants and Defendant is the only defendant needed to consent to removal.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 2

9.  Plaintiff's Complaint asserts that he and the putative class he seeks to represent are current or former employees of Defendant who are, or were, delivery drivers residing in the State of Washington. *See* Exh. A (Complaint), ¶¶ 1, 19.

10.  Plaintiff's Complaint asserts four causes of action: (1) failure to pay hourly and separate wages for time spent on statutory rest periods apart from and in addition to the piece-rate pay in violation of WAC 296-126-092; (2) violations of the Washington Minimum Wage Act (WMWA) RCW 49.46 *et seq.* for failure to pay all wages due and payable for compensable time, including time associated with rest periods; (3) failure to issue accurate itemized wage statements in violation of WAC 296-126-040; and (4) failure to pay all wages due at established pay periods in violation of WAC 296-126-023.

### III.   CAFA JURISDICTION IS SATISFIED

**A.   This Action Is A Class Action Under CAFA**

11.  Pursuant to Section 4 of CAFA, 28 U.S.C. § 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —
>
> > (A)   any member of a class of plaintiffs is a citizen of a State different from any defendant.

12.  CAFA defines a "class action" to include civil actions filed under State statutes or rules of procedure similar to Fed. R. Civ. P. 23 which authorize an action to be brought by one or more representative persons as a class action.  The Complaint is titled "Class Action Complaint" and alleges that it is brought pursuant to Washington Civil Rule 23 on behalf of a purported class. *See* Exh. A (Complaint), p. 1 and ¶ 1.  Therefore, this action is a "class action" under CAFA.

**B.   Minimum Diversity Exists.**

13.  Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).  At all times during Plaintiff's employment with Defendant, he has had a State of Washington driver's license, mailing address, and phone number.  Defendant is informed and believes that Plaintiff is residing and intends to indefinitely remain living continuously in Washington, and

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 3

1  that his domicile presently is in Washington.  Additionally, the putative class is defined to

2  only include individuals that "resided" in the State of Washington.  *See* Exh. A (Complaint),

3  ¶ 19.  Accordingly, Plaintiff is a citizen of Washington for purposes of CAFA.  *See* 28 U.S.C.

4  § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).[1]

5        14.    Defendant is a corporation and is therefore deemed to be a citizen of the state

6  in which it has been incorporated and the state where it has its principal place of business.  28

7  U.S.C. § 1332(c)(1).  A corporation's principal place of business is generally where its

8  headquarters is located.[2]

9        15.    Plaintiff alleges that Defendant is "headquartered in Temple, Texas."  *See*

10  Exh. A (Complaint), ¶ 6.  As reflected on the State of Washington Secretary of State's

11  Corporations search website, Defendant is a Texas corporation with its corporate

12  headquarters and principal place of business in Temple, Texas, where its executives are

13  located.  *See* URL at https://www.sos.wa.gov/corps/search_detail.aspx?ubi=600353022.  At

14  its corporate headquarters, Defendant's officers direct, control and coordinate its activities

15  and the majority of its executive and administrative functions are performed there.  Thus,

16  Defendant was not and is not a citizen of the State of Washington but, rather, was and is a

17  citizen of the State of Texas for the purpose of determining jurisdiction.  *See* 28 U.S.C. §

18  1332(c)(1); *Hertz*, *supra*, 130 S.Ct. at 1192; *Tosco*, *supra*, 236 F.3d at 499.

19        16.    Consequently, Defendant's citizenship is diverse from Plaintiff's, and the

20  minimum diversity requirement under CAFA is satisfied.

21  **C.**    **The Amount in Controversy Exceeds $5,000,000.00**

22        17.    Defendant alleges based on the following calculations that the amount in

23  controversy exceeds $5,000,000 only for the purposes of establishing subject matter

24
25       [1] *See also Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address and driver's license); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

26       [2] *See Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1192 (2010) (the "'principal place of business' is best read
27  as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and in practice, the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and
28  coordination."); *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 4

1    jurisdiction under CAFA.  Defendant's allegations and calculations are not admissions of

2    liability or damages with respect to any aspect of this case, or to the proper legal test(s)

3    applicable to Plaintiff's allegations, or whether a class action is proper.[3]

4         18.    A removing Defendant's notice of removal need only contain plausible

5    allegations, consistent with Fed. R. Civ. P. 8(a), to demonstrate the amount in controversy.

6    Evidentiary submissions are not required unless and until the removing Defendant's

7    allegations are contested by the plaintiff or questioned by the court:

8         In sum, as specified in 1446(a), a defendant's notice of removal need include
          only a plausible allegation that the amount in controversy exceeds the
9         jurisdictional threshold.  Evidence establishing the amount is required by
          1446(c)(2)(B) only when the plaintiff contests, or the court questions, the
10        defendant's allegation.

11   *Dart Cherokee Basin Operating Co., LLC*, *supra*, 135 S.Ct. at 554.

12        19.    This standard applies to complaints like the Complaint here, which do not

13   allege or seek a specific amount of damages:

14        When plaintiffs favor state court and have prepared a complaint that does not
          assert the amount in controversy … the Supreme Court has said that a
15        defendant can establish the amount in controversy by an unchallenged,
          plausible assertion of the amount in controversy in its notice of removal.
16

17   *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015), *citing Dart*,

18   *supra*, 135 S.Ct. at 554-55.

19        20.    The plaintiff's complaint is a court's "first source of reference in determining

20   the amount in controversy."  *LaCrosse*, *supra*, 775 F.3d at 1202, *citing St. Paul Mercury*

21   *Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).  The ultimate inquiry is what amount

22   is put "in controversy" by Plaintiff's Complaint, not what a court or jury might later

23   determine to be the actual amount of damages, if any.[4]

24
25        [3] *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015), *quoting Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) ("'Even when defendants have
26   persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial'").

27        [4] *See Ibarra*, *supra*, 775 F.3d at 1198 n. 1, *citing Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (defendants "are not stipulating to damages suffered" in a removal
28   petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal"); *St. Paul Mercury*, 303 U.S. at 291 ("the status of the case

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 5

MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TEL (206) 382-1000 | FAX (206) 386-7343

21. Plaintiff brings this action on behalf of himself and a putative class defined as:

> All individuals who (1) resided in Washington State, (2) were employed by McLane Transportation Co. of Arizona, LLC, in the position of delivery driver, (3) who drove at least one route of 3 hours or more within Washington State, and (4) who were paid on a "per mile" piece-rate basis, at any time from three years prior to the filing of this Complaint through the trial date (the "Class Period").

Exh. A (Complaint), ¶ 19.

22. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, *the aggregate* amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). Here, the claimed damages and penalties in the Complaint exceed that jurisdictional minimum.

23. The statute of limitations on the various claims asserted in the Complaint is three years. *See* RCW 4.16.080(2)-(3); *Prof'l Eng'g Ass'n v. Boeing Co.,* 139 Wash. 2d 824, 837-838 (2000) (three-year statute of limitations applies to wage claims). Given that the Complaint was filed on March 17, 2016, the putative class period begins on March 17, 2013.

### SIZE OF THE PROPOSED CLASS

24. The Complaint alleges that the number of class members exceeds 250. *See* Exh. A (Complaint), ¶ 21. Therefore, the aggregate membership of the proposed class is at least 100 as required under CAFA. *See* 28 U.S.C. § 1332(d)(5)(B).

### CAFA AMOUNT IN CONTROVERSY

25. The claims of the individual members in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the

---

as disclosed by the complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of America*, 2014 U.S. Dist. LEXIS 168932, *4 (C.D. Cal. Dec. 5, 2014) (citing cases holding that in measuring the amount in controversy, the court assumes that a jury will return a verdict on all claims asserted in the complaint, and that the ultimate inquiry is what the complaint alleges, not what the defendant might actually owe).

MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TEL (206) 382-1000 | FAX (206) 386-7343

type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."   Senate Judiciary Committee Report, S. Rep. 109-14, at 42.   Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[5]

26.   Defendant's payroll and employment data for its Washington-based delivery drivers from March 17, 2013 through March 17, 2016 and paid on a piece-rate basis (the "Drivers") was used to determine the CAFA amount in controversy for purposes of this Notice of Removal, and that voluminous data can be summarized as follows for that period: (a) they had an average effective hourly rate of $38.90 per hour; (b) they worked an aggregate of 66,102 days; (c) they worked an average of 8.1 hours[6] per workday; and (d) they worked an aggregate of 43,057.7 hours[7] in excess of 40 per week for all workweeks.

### FIRST CAUSE OF ACTION FOR FAILURE TO PAY SEPARATELY FOR REST BREAKS

27.   Plaintiff's **First Cause of Action** seeks unpaid wages based on Defendant's alleged failure to pay wages for rest breaks, alleging that Plaintiff and the putative class were not paid "separate and apart from the piece rate for rest breaks..." and "Defendant did not and does compensate its truck drivers for rest periods."   *See* Exh. A (Complaint), ¶¶ 14, 15, 34. Accordingly, Plaintiff's Complaint seeks recovery of unpaid wages for each day that Plaintiff and the putative class members experienced unpaid rest breaks.

28.   Based on the allegations of Plaintiff's Complaint and Defendant's above-summarized data, which show that the putative class members worked an average of 8.1 hours per day over a total of at least 66,102 aggregate days during the three-year period prior

---

[5] *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

[6] The hours are based on average on-duty hours logged pursuant to the U.S. Department of Transportation's Hours of Service Regulations.

[7] *See* fn. 6, *supra*.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 7

to the filing of the Complaint, and were paid an average effective hourly wage of $38.90 during that time period, Defendant calculates the amount in controversy on Plaintiff's claim for unpaid wages in connection with his First Cause of Action as follows:

| Average Hourly Rate | | Unpaid Rest Break Hours Per Day | | Total Number of Workdays | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $38.90 | x | 0.33[8] | x | 66,102 | = | $848,551.37 |

29.   Plaintiff also alleges that, *inter alia*, Defendant's failure to pay wages for rest breaks was *willful* and *intended* to deprive putative class members of wages in violation of RCW 49.52.050 and, therefore, seeks additional "statutory double damages" pursuant to RCW 49.52.070 for in an "amount equal to the amount of wages unlawfully withheld…" *See* Exh. A (Complaint), ¶¶ 35, Prayer for Relief, ¶ B(ii).

30.   Accordingly, the Amount in Controversy on Plaintiff's **First Cause of Action** is at least **$1,697,102.74** [$848,551.37 + $848,551.37].

### SECOND CAUSE OF ACTION FOR UNPAID OVERTIME WAGES

31.   Plaintiff's Second Cause of Action alleges that Defendant failed to pay him and putative class members overtime wages: (1) for each unpaid rest break ("Rest Break Overtime"); and (2) for all hours worked in excess of 40 per week in violation of RCW 49.46.130 ("Regular Overtime").   To be clear, Defendant denies and disputes that any "overtime" wages are due, owing or unpaid to Plaintiff and/or the putative class members under state law, including without limitation as a result of federal preemption.

32.   Plaintiff's Rest Break Overtime claim is based on Defendant's alleged failure to compensate rest periods and Plaintiff's allegation that "any day that an employee works an entire work day and misses the rest break, the employee is entitled to compensation for the rest break at the overtime rate." *See* Exh. A (Complaint), ¶ 41.  Plaintiff alleges that he "spent virtually ***every day of the month*** driving routes" for Defendants. *Id.* at ¶ 5 (emph. added).  He

---

[8] Plaintiff alleges that he and the putative class members were entitled to a paid rest break of at least 10 minutes for every four hours worked. *See* Exh. A (Complaint), ¶ 31.  Because putative class members worked an average of 8.1 hours per workday, Plaintiff seeks recovery of unpaid wages for a minimum of two 10-minute rest breaks per workday, for a total of 20 minutes (or 0.33 hours) per day.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 8

MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TEL (206) 382-1000 | FAX (206) 386-7343

also alleges that his "claims are **typical** of the claims of the members of the Class" and that "[c]ommon questions of law and fact exist as to all members of the class." *Id.* at ¶¶ 22, 24 (emph. added). As set forth above, Defendant's payroll data shows that the Drivers worked an average of 8.1 hours per workday, more than an "entire work day." Thus, Plaintiff's Complaint seeks overtime wages for each and every alleged unpaid rest break.[9]

33.     Overtime hours are ordinarily compensated at 1.5 times the effective hourly rate pursuant to RCW 49.46.130(1). The "straight time" component of the Rest Break Overtime wages Plaintiff seeks is already encompassed in the amount in controversy for the First Cause of Action, as shown in Paragraph 28, above. Thus, Defendant calculates the amount in controversy for Plaintiff's Rest Break Overtime claim by utilizing only the overtime "premium" wage component at a rate of 0.5 times the average effective hourly rate (or, $19.45) and calculates Plaintiff's claim for Rest Break Overtime wages as follows:

| Average Hourly Rate | | Unpaid Rest Break Hours Per Day | | Total Number of Workdays | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $19.45 | x | 0.33[10] | x | 66,102 | = | **$424,275.68** |

34.     Plaintiff's claim for Regular Overtime wages in connection with his Second Cause of Action is set forth in his allegations that "all hours worked beyond 40 hours during a workweek must be compensated at the overtime rate" and that "even after calculating hours worked and wages paid according to WAC 296-126-021, Defendant still failed to compensate Plaintiff for all hours worked once accounting for all compensatory time." Exh. A (Complaint), ¶¶ 43-44. Overtime hours are ordinarily compensated at 1.5 times the effective hourly rate pursuant to RCW 49.46.130(1), but under Plaintiff's liability theory, he

---

[9] To the extent Plaintiff alleges unpaid overtime for rest breaks in weeks that over 40-hours were worked, the Complaint still seeks overtime for each alleged unpaid rest break given Plaintiff's allegation that he worked "every day," which results in the putative class members, who Plaintiff alleges have claims typical of his own, working over 40-hours a week even based on only a 5-day workweek.

[10] Plaintiff alleges that he and the putative class members were entitled to a paid rest break of at least 10 minutes for every four hours worked. *See* Exh. A (Complaint), ¶ 31. Because putative class members worked an average of 8.1 hours per workday, Plaintiff seeks recovery of unpaid wages for a minimum of two 10-minute rest breaks per workday, for a total of 20 minutes (or 0.33 hours) per day.

MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TEL (206) 382-1000 | FAX (206) 386-7343

and the putative class members were only compensated for their purported "overtime" hours worked at their "straight-time" wage rate under Defendant's piece-rate pay formula.  As such, Defendant calculates the amount in controversy for the claimed Regular Overtime wages by utilizing only the overtime "premium" wage component at a rate of 0.5 times the average effective hourly rate ($19.45), as follows:

| Overtime Wage Rate | | Total Overtime Hours Worked | | Amount In Controversy |
|---|---|---|---|---|
| $19.45 | x | 43,057.7 | = | **$837,472.26** |

35.    Therefore, the amount in controversy on Plaintiff's claim for overtime wages is at least <u>$1,261,747.94</u> ($424,275.68 + $837,472.26).

36.    Plaintiff also alleges that Defendant's failure to pay overtime wages was *willful* and *intended* to deprive putative class members of wages in violation of RCW 49.52.050 and, therefore, seeks additional "statutory double damages" pursuant to RCW 49.52.070 for in an "amount equal to the amount of wages unlawfully withheld…"  *See* Exh. A (Complaint), ¶¶ 45, Prayer for Relief, ¶ C(ii).  Thus, the amount in controversy on Plaintiff's **Second Cause of Action** is at least **$2,523,495.88** ($1,261,747.94 x 2).

### THIRD CAUSE OF ACTION FOR INACCURATE ITEMIZED WAGE STATEMENTS

37.    Plaintiff's Third Cause of Action alleges that Defendant "failed to furnish Plaintiff and the Class members with accurate itemized wage statements because the statements failed to itemize wages owed for lawfully required rest periods payable at the overtime rate."  *See* Exh. A (Complaint), ¶ 50.  In connection with this claim, Plaintiff seeks "[d]ouble damages in an additional amount equal to the amount [of] wages unlawfully withheld during the Class Period."  *Id.* at ¶ 51, Prayer for Relief, ¶ D(ii).  As set forth in the calculations pertaining to Plaintiff's First and Second Causes of Action, above, the amount in controversy for alleged unpaid regular and overtime *wages* in connection with Plaintiff's claims in this action is at least $2,110,299.31 ($848,551.37 + $1,261,747.94).  Thus, the amount in controversy on Plaintiff's **Third Cause of Action** is at least **$2,110,299.31**.

MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TEL (206) 382-1000 | FAX (206) 386-7343

<u>**Fourth Cause of Action for Failure to Pay Wages Due at Established Pay Periods**</u>

38.     Plaintiff's Fourth Cause of Action alleges that Defendant "failed to meet its obligation to pay all wages due to Plaintiff and Class Members at the established regular pay periods." *See* Exh. A (Complaint), ¶ 55.  In connection with this claim, Plaintiff seeks "[d]ouble damages in an additional amount equal to the amount [of] wages unlawfully withheld during the Class Period." *Id.* at ¶ 56, Prayer for Relief, ¶ E(ii).  As set forth in the calculations pertaining to Plaintiff's First and Second Causes of Action, above, the amount in controversy for alleged unpaid regular and overtime *wages* in connection with Plaintiff's claims in this action is at least $2,110,299.31 ($848,551.37 + $1,261,747.94).   Thus, the amount in controversy on Plaintiff's **Fourth Cause of Action** is at least <u>**$2,110,299.31**</u>.

<u>**Statutory Attorneys' Fees**</u>

39.     Plaintiff also seeks statutory attorneys' fees in connection with each and every cause of action alleged in the Complaint.  See Exh. A (Complaint), ¶¶ 35, 37, 51, 56, and Prayer for Relief at ¶¶ B(ii), C(ii).  In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").   Where, as here, a common fund recovery potentially is sought, the Ninth Circuit uses a benchmark rate of 25% of the potential award as an estimate for attorneys' fees.  *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 Fed.Appx. 452, 457 (9th Cir. 2009).   Utilizing Defendant's calculations of the amount in controversy on Plaintiff's First through Fourth Causes of Action and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendant calculates the amount in controversy on Plaintiff's **statutory attorneys' fees** claim to be no less than <u>**$2,110,229.31**</u> [($1,697,102.74 + $2,523,495.88 + $2,110,299.31 +

**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor
Seattle, Washington  98104-1064
Tel (206) 382-1000 | Fax (206) 386-7343

$2,110,299.31) x 25%].

40.     Based on the foregoing, the amount in controversy on Plaintiff's First through Fourth Causes of Action, inclusive of statutory attorneys' fees, is at least **$10,551,496.55**, which exceeds the $5,000,000.00 CAFA threshold:

| Cause of Action / Claim | Amount in Controversy |
|---|---|
| First Cause of Action:  Unpaid Rest Breaks | $1,697,102.74 |
| Second Cause of Action:  Unpaid Overtime Wages | $2,523,495.88 |
| Third Cause of Action:  Inaccurate Wage Statements Penalties | $2,110,299.31 |
| Fourth Cause of Action:  Late Wage Payments Penalties | $2,110,299.31 |
| Statutory Attorneys' Fees (25%) | $2,110,299.31 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$10,551,496.55** |

41.     Defendant reserves the right to provide evidence as to the calculations above and all other amounts sought by Plaintiff in the Complaint, should Plaintiff challenge or the Court question the amount in controversy.

## IV.     TIMELINESS OF REMOVAL

42.     The Complaint was served on Defendant on March 24, 2016.  This Notice of Removal is timely in that it has been filed consistent with 28 U.S.C. §§ 1332(d), 1441(b), and 1446, and within 30 days of the date of service of the Complaint.

## V.     NOTICE TO PLAINTIFF

43.     Contemporaneously with the filing of this Notice of Removal in this Court, written notice of such filing will be served on Plaintiff's counsel of record as reflected in the attached Certificate of Service.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of Washington for Pierce County.

WHEREFORE, having provided notice as is required by law, the State Court Action should be removed to this Court.

MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TEL (206) 382-1000 | FAX (206) 386-7343

1

2

MILLS MEYERS SWARTLING P.S.

3

By:      s/ Kasey D. Huebner

4

Kasey D. Huebner
WSBA No. 32890

5

Email: khuebner@millsmeyers.com
MILLS MEYERS SWARTLING

6

1000 2nd Avenue, 30th Floor
Seattle, WA 98104

7

Tel: 206-382-1000

8

Matthew C. Kane
(California State Bar # 171829)*

9

mkane@mcguirewoods.com
Sabrina A. Beldner

10

(California State Bar # 221918)*
sbeldner@mcguirewoods.com

11

Sylvia J. Kim

12

(California State Bar # 258363)*
skim@mcguirewoods.com

13

Sean M. Sullivan
(California State Bar # 286368)*

14

ssullivan@mcguirewoods.com

15

McGuireWoods LLP

16

1800 Century Park East, Eighth Floor
Los Angeles, CA  90067

17

Phone:  310.315.8200
Fax:     310.315.8210

18

19

Attorneys for Defendant
MCLANE COMPANY, INC. dba

20

MCLANE/NORTHWEST

21

*pro hac vice applications forthcoming

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 13

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

I further certify that I mailed a true and correct copy of the foregoing to the following non-CM/ECF participant:

India Lin Bodien, Esq.
Law Offices of India Bodien, Esq.
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Ph: (253) 212-7913
india@indialinbodienlaw.com

Craig J. Ackermann, Esq.
Ackermann & Tilajef, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Ph: (310) 277-0614
cja@ackermanntilajef.com

Julian Hammond, Esq.
Polina Pecherskaya, Esq.
Ari Cherniak, Esq.
Hammondlaw, P.C.
1829 Reisterstown Rd. Suite 410
Baltimore, MD 21208
Ph: (310) 601-6766
jhammond@hammondlawpc.com
ppecherskaya@hammondlawpc.com
acgerniak@hammondlawpc.com

DATED April 22, 2016.

Kendra Brown, Legal Assistant
Mills Meyers Swartling

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION - 14