HONORABLE BENJAMIN H. SETTLE

1

2

3

4

5

6

7

8

9

10

11

12

13

IN THE UNITED STATES DISTRICT COURT

14

FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

15

STEVEN EILERMAN, individually and on behalf of all others similarly situated,

Case No.: 3:16-CV-05303-BHS

16

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff,

17

vs.

18

MCLANE COMPANY, INC. DBA MCLANE/NORTHWEST, a Washington Corporation,

NOTE ON MOTION CALENDAR: February 6, 2017

19

20

Defendant.

21

22

23

24

25

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

**TABLE OF CONTENTS**

I.    INTRODUCTION .....................................................................................................1

II.   FACTUAL BACKGROUND ....................................................................................2

III.  PROCEDURAL BACKGROUND............................................................................2

IV.   THE PROPOSED SETTLEMENT TERMS .............................................................3

V.    ARGUMENT ............................................................................................................6

    A.   The Court Should Preliminarily Approve This Class Action Settlement Under Rule 23 (e) of the Federal Rules of Civil Procedure. ...............................................6

    B.   The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure, Rule 23 for Conditional Certification. ........................................................7

        1.   FRCP 23(a) Requirements for Class Certification Have Been Met. ..............7

            a.   The Class is Sufficiently Numerous. ...................................................7

            b.   The Commonality Requirement is Satisfied. ......................................8

            c.   Plaintiff's Claims Are Typical of Those of the Putative Class. ..........8

            d.   Plaintiff and His Counsel Will Fairly and Adequately Represent the Class. ............................................................................................8

        2.   FRCP 23(b)(3) Requirements for Class Certification Have Been Met..........9

    C.   The Settlement is Fair, Reasonable, and Adequate....................................................10

        1.   The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties................................................................................11

            a.   Plaintiff's claims ...............................................................................11

            b.   Defendant's Defenses .......................................................................13

            c.   The Settlement Represents 73% of Plaintiff's Rest Break Damages........................................................................................17

            d.   The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Reasonable, and Adequate...................................................18

            e.   The Settlement was the Product of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.........................................................18

            f.   The Proposed Notice and Claims Process Are Reasonable. .............19

i

VI.     REQUESTED ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE AWARDS ARE FAIR AND REASONABLE. ....................................................................21

        A.  The Class Representative Service Award Is Reasonable. ...................................23

VII. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING. ...........................24

VIII. CONCLUSION ..................................................................................................................24

ii

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................9

*Bobowski v. Clearwire Corp.,*
    2012 U.S. Dist. Ct. Motions LEXIS 25465 at *9 (Nov. 8, 2012)........................22, 23

*Bostain v. Food Express, Inc.,*
    159 Wash. 2d 700 (2007).........................................................................16

*Burnham v. Ruan Transp.,*
    Case No. SACV 12-0688 AG (ANx), 2013 WL 4564496 (C.D. Cal. Aug. 16, 2013)...............14

*Chelan County Sheriff's Ass'n v. Chelan County,*
    109 Wash.2d 282 (1987).........................................................................13

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004)...................................................................10

*Demetrio v. Sakuma Bros. Farms, Inc.,*
    183 Wash. 2d 649 (2015)..........................................................12, 13, 15, 16

*Dennings v. Clearwire Corp.,*
    No. C10-1859JLR, 2013 U.S. Dist. LEXIS 64021 (W.D. Wash. May 3, 2013) .......................22

*Dilts v. Penske Logistics, LLC et al.,*
    769 F.3d 637 (9th Cir. July 9, 2014)...........................................................14

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)............................................................................20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................passim

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994))....................................................................23

*Hughes v. Microsoft Corp.,*
    No. C98-1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001)....................................19

*In re Beef Indus. Antitrust Litig.,*
    607 F.2d 167 (5th Cir. 1979)...................................................................10

*In re Bluetooth Headset Prods. Liab.,*
    654 F.3d 935 (9th Cir. 2011) ..................................................................22

iii

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................... 18, 22, 24

*In re Online DVD*,
779 F.3d 934 (9th Cir. 2015) ........................................................................... 24

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .............................................................................. 22

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ......................................................................... 11

*Lewis v. Starbucks Corp.*,
2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ............................................ 18, 21

*McNamara v. Bre-X Minerals Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002) ..................................................................... 25

*Mercury Interactive Corp.*,
618 F.3d 988 (9th Cir. 2010) ........................................................................... 22

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) ....................................................................... 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................ 20

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ..................................................................... 10, 17

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ........................................................................................ 19

*Pellino v. Brink's, Inc.*,
164 Wash. App. 668 (2011) .............................................................................. 15

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........................................................................................ 20

*Phillips v. Asset Acceptance, LLC*,
736 F.3d 1076 (7th Cir. 2013) ......................................................................... 24

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ....................................................................... 7

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................... 17, 24

*Sam Francis Found. v. Ebay, Inc.*,
784 F.3d 1320 (9th Cir. 2016) ......................................................................... 16

iv

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ...................................................................... 20

*Slack v. Swift Transportation Co. of Arizona, LLC,*
    2013 WL 6095548 (W.D. Wash. 2013) ........................................................ 15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...................................................................... 24

*Vaquero v. Ashley Furniture Industries, Inc.,*
    824 F.3d 1150 (9th Cir. 2016) ....................................................................... 9

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .................................................................... 23

*Washington State Nurses Ass'n v. Sacred Heart Med. Center,*
    175 Wash. 2d 822, 832 (2012) .................................................................... 12

*Wingert v. Yellow Freight Systems, Inc.,*
    146 Wash. 2d 841 (2002) ................................................................ 12, 13, 17

*Wren v. RGIS Inventory Specialists,*
    No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................ 11

**Statutes**

49 C.F.R. § 395.3 ..................................................................................................... 14

49 U.S.C. Sec. 10101 et seq. ................................................................................... 16

49 U.S.C. Sec. 3101 et seq. ..................................................................................... 16

49 USC § 14501 ...................................................................................................... 13

Revised Code of Washington  49.46.130 .................................................................. 1

Revised Code of Washington 49.46.090 .................................................................. 21

Revised Code Washington 49.52.050 ...................................................................... 12

Revised Code Washington 49.52.070 .......................................................... 12, 16, 21

Washington Annotated Code 296-126-023 ................................................................ 1

Washington Annotated Code 296-126-040 ................................................................ 1

Washington Annotated Code 296-126-092 ................................................... 1, 8, 11, 12

Washington Annotated Code 296-131-020 ........................................................... 13, 16

v

**Rules**

Federal Rule of Civil Procedure 23 ............................................................................passim

**Treatises**

4 Newberg on Class Actions § 11.25 (4th ed. 2012) ........................................................24

*Manual for Complex Litigation* (4th ed. 2004), § 21.61 ....................................................6

Newberg on Class Actions § 14:03 (3d ed. 1992) .........................................................23

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

# I.   INTRODUCTION

Plaintiff Steven Eilerman ("Plaintiff") seek preliminary approval of a $775,000 non-reversionary class action settlement of wage and hour claims against Defendant McLane Company, Inc. dba McLane Northwest ("Defendant" or "McLane"). This class action was brought on behalf of approximately 250 Washington State residents employed by Defendant as truck drivers and paid on a "per-mile" piece rate basis ("Class Members") from April 17, 2013 through December 31, 2016 ("Class Period").  Plaintiff alleges that McLane (a) failed to pay Class Members separately and hourly for their time spent on their statutory rest breaks at the applicable overtime rate in violation of the Washington Annotated Code ("WAC") 296-126-092[1]; (b) failed to pay all wages due and payable for compensable time, including time associated with rest periods the Washington Minimum Wage Act ("WMWA") codified at Revised Code of Washington ("RCW") 49.46.130(1)[2]; (c) failed to issue accurate itemized wage statements in violation of the WAC 296-126-040;[3] and (d) failed to pay all wages due at established pay periods in violation of WAC 296-126-023(3).[4]

After engaging in informal discovery, attending a full-day mediation session with an experienced and skilled mediator, and following months of hard-fought negotiations, Plaintiff and McLane (the "Parties") agreed to settle this action. The Joint Stipulation and Class Action Settlement Agreement ("Settlement Agreement" or "SA") is attached as **Exhibit 1** to the proposed Order, filed herewith. The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Federal Rule of Civil Procedure 23 and is fair, adequate, and reasonable.

---

[1] "Employees shall be allowed a rest period of not less than 10 minutes, on the employers' time, for each 4 hours of working time.  Rest periods shall be scheduled as near as possible to the midpoint of the work period.  No employee shall be required to work more than three hours without a rest period[…]"

[2] "…no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed."

[3] "Every employer shall furnish to each employee at the time of payment of wages an itemized statement showing the pay basis (i.e., hours or days worked), rate or rates of pay, gross wages and all deductions for that pay period."

[4] "An employer shall pay all wages owed to an employee on an established regular pay day at no longer than monthly payment intervals."

1

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

McLane does not oppose Plaintiff's instant motion. Accordingly, Plaintiff requests that the Court grant preliminary approval of the proposed Settlement, conditionally certify the proposed Settlement Class, appoint Plaintiff and Plaintiff's Counsel as Class Representative and Class Counsel of the Class, approve the proposed notice plan, and schedule a final approval hearing.

## II.    FACTUAL BACKGROUND

McLane is a wholesale distribution company that provides grocery and non-food consumer products to retailers and convenience stores and to restaurants throughout the United States. *See* Declaration of Julian Hammond ("Hammond Decl.") filed herewith, ¶ 11.a. McLane Northwest, part of McLane's grocery distribution unit, employs Class Members to transport groceries by truck from its distribution center located in Lakewood, Washington to customers located throughout Washington, Oregon, Idaho, Montana and Alaska. Id. ¶ 11.b.

Plaintiff and Class Members worked, on average, 8.1 hours per day and five days a week. Dkt. # 1 at p. 7. Defendant compensated Class Members based on a piece-rate formula consisting of a combination of a per-mile rate, a percentage of revenue, and a percentage of the weight of the load. Dkt. # 1-1 at p. 4. However, Plaintiff alleges that Defendant failed to pay Plaintiff and Class Members for their time spent on statutory rest periods separate from their piece rate compensation, and at the applicable overtime rate, as required under Washington law. Dkt. # 1-1 at p. 5.

## III.    PROCEDURAL BACKGROUND

On March 17, 2016, Plaintiff filed his class action Complaint in the Pierce County Superior Court alleging causes of action for Defendant's failure to pay hourly and separate wages for time spent on statutory rest periods apart from and in addition to their piece-rate pay, failure to pay all wages due and payable for compensable time associated with rest periods, failure to issue accurate itemized wage statements, and failure to pay all wages due at established pay periods. Dkt. # 1 at p. 2. On April 22, 2016, Defendant removed the case to the United States District Court for the Western District of Washington in Tacoma. Dkt. # 1.

In its answer to the Complaint, McLane denied Plaintiff's claims. Dkt. # 26. McLane

2

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

further averred that the case should not be certified as a class action, that it did not unlawfully fail to compensate Class Members for their rest breaks, and that it complied with Washington law by paying them separately and hourly for their rest breaks.  Id.

Following removal, Plaintiff and Defendant agreed to attend a mediation. Hammond Decl. at ¶ 13. In preparation for the mediation, the Parties exchanged highly relevant information including the class size, the number of work weeks during the Class Period, number of hours worked by Class Members, and Class Members' average hourly rate. Id. at ¶ 14. Plaintiff also conducted an extensive investigation including interviewing numerous putative Class Members, gathering declarations from 5 of them, and analyzing employee handbooks, job descriptions, and other relevant documents provided by Plaintiff. Id. The Parties then drafted and exchanged detailed mediation briefs setting forth the strengths and weaknesses of each claim. Id. at ¶ 15.

On October 26, 2016 the Parties participated in a full-day mediation before the Hon. Edward Infante (retired). Id. at ¶ 16. The parties were unable to reach a settlement at that time but agreed to continue their settlement negotiations through Judge Infante. Id. Following several more months of hard-fought negotiations, the Parties' accepted a mediator's proposal, as fully specified in this Settlement Agreement. Id. at ¶ 17.

### IV.     THE PROPOSED SETTLEMENT TERMS

The SA resolves all claims of Plaintiff and the proposed Class against McLane. A summary of the Settlement terms follows:

1.     <u>Settlement Fund</u> – McLane will pay $775,000.00 ("Settlement Fund") inclusive of payments for all unpaid wages, interest and penalties to the Class, Plaintiff's Counsel's attorneys' fees, costs, and expenses, service awards for the Class Representative, and the costs of settlement administration. This is a fixed common fund settlement amount and none of the Settlement Fund shall revert back to McLane. SA ¶ 9.

2.     <u>Class Definition and Class Period</u> – This Class is defined as individuals who (1)

3

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

resided in Washington State, (2) were employed by Defendant as a truck driver, (3) who drove at least one route of three hours or more within Washington State, and (4) who were paid on a "per mile" piece-rate basis, at any time from March 17, 2013 through December 31, 2016 (the "Settlement Class Period"). SA ¶ 4.

3. <u>Net Settlement Fund</u> – The Net Settlement Fund – the amount remaining of the Settlement Fund after deductions for attorneys' fees, costs, and expenses, settlement administration costs, Class Representative service award – will total approximately $486,666. This amount will be distributed to Participating Settlement Class Members pro-rata based on their weeks worked as a Class Member during the Class Period. SA ¶ 11. The Net Settlement Fund includes payment of both the employer and employee side payroll taxes, both of which will be deducted and paid on the wage component of each settlement payment. SA ¶ 22.a.

4. <u>No Claims Made Procedure</u>– Settlement Class Members will not be required to file a claim in order to receive their share of the Net Settlement Fund.  SA ¶ 17. They will, however, have the opportunity to correct any errors in McLane's records for their number of weeks worked as a Class Member that is used to calculate the settlement payment. SA ¶ 20.  Class Members will also have the opportunity to opt out of, or object to, the settlement, by the method specified in the Class Notice. SA ¶ 19.

5. <u>Class Counsel's Attorneys' Fees, Costs, and Expenses</u> – Plaintiffs' Counsel request, and McLane does not oppose, that the Court preliminarily approve their attorneys' fees in the amount of 33% of the Settlement Fund ($258,333) as agreed upon in the Settlement.  In addition, Plaintiff's Counsel will seek reimbursement for up to $15,000 in actually incurred out-of-pocket litigation costs and expenses. SA ¶ 13.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

6.    <u>Class Representative Service Payments</u> – Plaintiff requests that the Court preliminarily approve a service award of $5,000.00 for the Class Representative as agreed upon in the Settlement. SA ¶ 14. This request is based on evidence of the time spent, assistance provided, and risks incurred by the Class Representative for the benefit of the Class, as described in his Declaration filed with this Motion.

7.    <u>Settlement Administration</u> – The Parties have selected Simpluris to serve as the Settlement Administrator. SA ¶ 16. The Settlement Administrator will, among other things, distribute the Class Notice, calculate payouts for each Settlement Class member, resolve any disputes over the weeks worked in the Class Period, draw and distribute checks to the Settlement Class Members, administer the Settlement Fund, prepare and file any necessary tax reporting for the Settlement Fund, and report to the Parties on the notice/opt-out process and payment of the Settlement Fund. McLane will provide the Settlement Administrator with the contact and employment information of the Class within fifteen (15) business days of preliminary approval. SA ¶ 25. Individual notice will be mailed to all Settlement Class Members within ten (10) business days of receipt of the Class list. SA ¶ 26.

8.    <u>Class Notice</u> – The proposed Class Settlement Notice explains the terms of the settlement and how to object and/or opt out. All objections and requests for exclusion must be completed and post-marked within thirty (30) days after the initial mailing of the Notice. SA ¶ 19. In addition, the proposed Class Settlement Notice will include an individualized computation of the approximate amount of the individual settlement award that the particular Settlement Class Member will receive from the Net Settlement Fund, how that amount was calculated, and how the weeks worked calculation, which is the basis for the individual award, can be challenged. SA ¶ 17.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

All work week challenges must be completed and post-marked within thirty (30) days after the initial mailing of the Notice. SA ¶ 20.

9.     <u>Tax Consequences of Settlement Payments</u> – Each Participating Settlement Class Member's individual settlement payment will be treated as follows: 1/3 will be allocated to alleged unpaid wages for which IRS Forms W-2 will issues; 1/3 will be allocated to alleged statutory or other non-wage damages for which IRS Forms 1099-MISC will issue; and 1/3 will be allocated to alleged unpaid interest for which IRS Forms 1099-MISC will issue. SA ¶ 22. The Administrator shall issue to Settlement Class Members the appropriate tax reporting form(s) (i.e. W-2 and 1099-INT) for payments made to the Class. Id.

10.     <u>Scope of Release and Final Judgment</u> – The release contemplated by the proposed Settlement corresponds to the Complaint, releasing claims arising from or based on McLane's alleged failure to pay separately and hourly for rest breaks at the overtime rate during the Class Period. SA ¶ 27. Plaintiff will enter into a general release in exchange for the Enhancement Award. SA ¶ 28. Upon final approval of the Settlement Fund, the parties will seek a dismissal of the entire case with prejudice and final judgment on all of the Class claims. SA ¶ 31.

## V.     ARGUMENT

**A.     The Court Should Preliminarily Approve This Class Action Settlement Under Rule 23 (e) of the Federal Rules of Civil Procedure.**

A certified class action may not be dismissed, compromised or settled without approval of the Court. *See* Fed. R. Civ. P. 23(e).  Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.  *Manual for Complex*

6

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

*Litigation* (4th ed. 2004), § 21.61.  The decision to approve or reject a proposed settlement is committed to the sound discretion of the court and may be reversed only upon a strong showing of clear abuse of discretion.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b) ; *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)) .  Here, both of these requirements for preliminary approval of this class action settlement are satisfied.

**B.**    **The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure, Rule 23 for Conditional Certification.**

Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Fed. R. Civ. P. 23(a)(1) - (4). Furthermore, Rule 23(b)(3)  provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) .  All of these requirements are met here.

**1.**    **FRCP 23(a) Requirements for Class Certification Have Been Met.**

**a.**    **The Class is Sufficiently Numerous.**

The numerosity prerequisite demands that the class be large enough that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1) .  While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty (40) members.  *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, the far larger numbers of class members satisfy the numerosity requirement. Hammond Decl. ¶ 11.c.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

**b.      The Commonality Requirement is Satisfied.**

The commonality prerequisite for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019.

The common questions here relate to Defendant's uniform and state-wide policy and/or practice of compensating Class Members by the piece and of failing to pay Class Members separately and hourly for their rest breaks.  The existence of this singular company policy as uniformly applied to the entire Class and the question of whether those policies violated WAC 296-126-092, RCW 49.46.130(1), and the MWA satisfy the commonality requirement of Rule 23(a)(2).

**c.      Plaintiff's Claims Are Typical of Those of the Putative Class.**

The typicality prerequisite of Rule 23(a) is met if the named Plaintiff's claims "are reasonably co-extensive with those of absent class member; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here typicality is satisfied because Plaintiff's claims are the very same as the claims brought by Class Members – they were all employed as truck drivers, were subject to the same compensation policies and procedures, allege and testified that they incurred unpaid wages, and seek the same type of relief.

**d.      Plaintiff and His Counsel Will Fairly and Adequately Represent the Class.**

The adequacy prerequisite permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4) .  This means that the proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Neither Plaintiff nor his counsel have a conflict with any putative class member and their interests are coextensive with the Class' interests. Hammond Decl. ¶ 4. Class counsel has conducted informal discovery, investigated Plaintiff's claims, and interviewed numerous putative Class Members. Id. ¶ 14. In addition, Plaintiff has been actively involved in this litigation, including attending the full-day mediation, contacting numerous putative Class Members regarding the case,

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

and providing relevant documents. Id. ¶ 37. Similarly, Plaintiff's Counsel has and will continue to vigorously prosecute the action on behalf of the Plaintiff and the Class. Id. ¶ 49. Plaintiff's counsel has significant experience litigating wage and hour class actions and have been certified by numerous state and federal courts as competent and adequate class counsel. Id.  ¶ 7.

### 2.   FRCP 23(b)(3) Requirements for Class Certification Have Been Met.

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy."

The common questions raised in this action predominate over any individualized questions concerning the Class.  Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members.  *Hanlon*, 150 F.3d at 1022-23.  Here, the common questions of whether Defendant failed to pay Class Members separately and hourly for their rest breaks, and whether that failure violates the law, predominates over any potential individualized issues. An individual inquiry as to each of the Class Member's hours worked, and the number of rest breaks each Class Member is entitled to, would not undercut commonality. *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under *Tyson Foods* and our precedent, the need for individual damage calculations does not, alone, defeat class certification.").

Further, this class action would be a superior method of adjudication compared to a multitude of individual suits.  To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P.

9

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

23(b)(3)(A)-(D) .  Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims as the individual prosecution of the claims would be identical to and duplicative of the class action litigation.  The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.  Because there are no manageability issues presented by the resolution of the Class' identical claims under Washington state law, a class action is the superior method for adjudication the claims in this action.

C.      **The Settlement is Fair, Reasonable, and Adequate.**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2) ; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions."  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979).  Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon*, 150 F.3d at 1026.

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor*

10

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

*ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors to this case, it is clear that the proposed settlement is fair, reasonable, and adequate.

    **1.**   **The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties.**

The Settlement represents 73% of the unpaid wages (excluding overtime and penalty claims) that Plaintiff contends are owed to the Settlement Class, and is a fair compromise given the litigation risks and uncertainties presented by continued litigation. Hammond Decl. ¶ 35-36. McLane asserted and would have continued to assert legal and factual grounds to defend against this action, including significant issues of federal preemption. *Id.* ¶ 21. While Plaintiff's counsel is confident that McLane violated Washington State law, continued litigation would be costly, time consuming, and uncertain in outcome. Plaintiff would still have to litigate class certification, establish class-wide liability, and then prove up various issues regarding damages. Such efforts would likely take years, and necessitate expert witness testimony, as well as other costs, risks, and potential delays. Appellate risks could further delay and jeopardize recovery. By contrast, this Settlement ensures timely relief and substantial recovery of the unpaid rest breaks Plaintiff contends are owed to the Settlement Class.

    **a.**   **Plaintiff's claims**

Plaintiff alleged that Class Members were not separately compensated on an hourly basis for rest periods they took. Hammond Decl. at ¶ 11.g. Under Washington law, "[e]mployees shall be allowed a rest period of not less than 10 minutes, on the employers' time, for each 4 hours of working time." WAC 296-126-092(4). If an employee works more than eight hours in a day, he or she is entitled to two rest periods since "[n]o employee shall be required to work more than three hours without a rest period." *Id.* In *Wingert v. Yellow Freight Systems, Inc.*, 146 Wash. 2d 841, 848 (2002), the Washington Supreme Court held that the statutory provision, "on the employer's time," means that an employer must compensate employees hourly and separately for their time spent taking rest periods authorized under Washington Law." In *Demetrio v. Sakuma Bros. Farms, Inc.*,

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

183 Wash. 2d 649, 659 (2015), the Washington Supreme Court confirmed that an employer's obligation to pay wages for rest periods extends to piece-rate workers, obligating employers to pay piece-rate workers hourly and separately apart from the piece for rest breaks under WAC 296-126-092 (4). *Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wash. 2d at 657. Therefore, Plaintiff alleged that Defendant owed him, and other Class Members, separate and hourly pay for their statutory rest breaks. Hammond Decl. at ¶ 12. Plaintiff calculated Defendant's maximum exposure for unpaid rest breaks as **$1,060,682**. Hammond Decl. at ¶ 19.a.

Plaintiff further alleged that his rest breaks should be compensated at the overtime rate because Class Members were not provided a rest break at all and therefore worked over 40 hours per weeks. Hammond Decl. at ¶ 11.e; See *Washington State Nurses Ass'n v. Sacred Heart Med. Center*, 175 Wash. 2d 822, 832 (2012) (holding that where the missed rest breaks extend the workweek beyond 40 hours, employees are "entitled to overtime compensation for the first 10 minutes of each break that they missed" under the overtime provisions of RCW 49.46.130(1) under the reasoning that "compensating employees who forgo their rest periods with overtime pay will help to ensure that employers continue to provide those breaks to their employees.") Plaintiff calculated Defendant's maximum exposure under this cause of action as **$1,591,024**. Hammond Decl. at ¶ 19.b.

Plaintiff alleged that McLane is liable for double damages under RCW 49.52.070[5] because Defendant violated 49.52.050(2)[6] by willfully withholding wages. The *Wingert* Court held that "an employer's nonpayment of wages is willful and made with intent 'when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment.'" *Wingert v. Yellow Freight Systems, Inc.*, 146 Wash. 2d at 849 (citing *Chelan County Sheriff's Ass'n*

---

[5] "Any employer … who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee … for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees."
[6] "Any employer …who…[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract… Shall be guilty of a misdemeanor."

12

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

*v. Chelan County*, 109 Wash.2d 282, 300 (1987)). Plaintiff alleged that Defendant's failure to pay for rest breaks was knowing and intentional - at least since July 15, 2015, when the Washington Supreme Court explicitly held in *Demetrio v. Sakuma Bros. Farms Inc.* that piece-rate workers must be paid separately for rest breaks. Hammond Decl. at ¶ 11.g. Even prior to July 15, 2015, Plaintiff argued that there was no bona fide dispute as to rest break pay because the "only <u>reasonable</u> interpretation" for the applicable regulation, WAC 296-131-020(2), "requires pay [for rest breaks] separate from the piece rate." *Demetrio*, 183 Wash. 2d at 656. Hammond Decl. at ¶ 11.g. Plaintiff calculated Defendant's maximum exposure for double damages as **$1,591,024**. Hammond Decl. at ¶ 19.c.

Based on Plaintiff's investigation, including an analysis of the information provided by Defendant, and assuming Plaintiff were to prevail on class certification and all liability determinations, Plaintiff estimated Defendant's <u>maximum exposure</u> for unpaid rest breaks as **$1,060,682.** Hammond Decl. at ¶ 20.  Including Plaintiff's overtime claims, and claims for double damages, the maximum exposure increases to **$3,182,048**. Hammond Decl. at ¶ 20.

**b.     <u>Defendant's Defenses</u>**

McLane denied the allegations in the Complaint, and maintained that it could not be held be held liable for several the reasons discussed in detail below, including (1) that Plaintiff's state law claims are preempted by federal law; (2) Defendant could defeat class certification; and (3) Defendant could win on the merits either on summary judgment or at trial. Hammond Decl. at ¶ 21. These arguments drastically reduced Defendant's liability in this case.

**i.   Defendant's Federal Preemption Defense**

As an initial matter, McLane asserted that Plaintiff's claims are subject to federal preemption based on the Federal Aviation Authorization Administration Act ("FAAAA").[7] Hammond Decl., at ¶ 22.  Only until the *Dilts* decision, where the 9th Circuit held that the FAAAA does not preempt

---

[7] The FAAAA provides that a state "may not enact or enforce a law…related to a price, route, or service of any motor carrier…with respect to the transportation of property." 49 USC § 14501(c)(1).

13

state law regarding meal and rest breaks, was there clear authority that state law regarding rest break and wage/hour claims was applicable to employees in the motor carrier transportation industry.[8] *Dilts v. Penske Logistics, LLC et al.*, 769 F.3d 637 (9th Cir. July 9, 2014). However, McLane argued that *Dilts* is factually distinguishable in that plaintiffs in *Dilts* drove routes solely intrastate, unlike Class Members who spend at least half of their time outside of Washington State. Hammond Decl., at ¶ 23. Therefore, McLane argued that the Hours of Service promulgated by the Federal Motor Carrier Safety Administration, rather than Washington state law, applies to Class Members.[9] Id. McLane also pointed to recent Congressional efforts to overturn *Dilts* and retroactively expand the scope of FAAAA preemption to preempt state meal and rest break laws as applied to truck drivers. Hammond Decl. at ¶ 24. Plaintiff acknowledges that if such legislation passes, this case would immediately be worthless. Id. at ¶ 25. *See* SA ¶ 19.

### ii. Class Certification Risk

McLane contended that Plaintiff's claims are not suitable for class certification because individual issues would predominate. Specifically, McLane argued (1) that each Class Member would have to prove that his or her compensation did not reimburse rest breaks separately and hourly; (2) that each Class Member would have to prove that he or she was unable to take a rest break at all in Washington State in order to seek compensation at the overtime rate; and (3) that the differences in the hours worked each day amongst the Class, and thus the number of unpaid rest breaks incurred by each Class Member, would raise insurmountable individualized issues. Hammond Decl., ¶¶ 26, 28.

Plaintiff disagreed with McLane and believed that each of these claims would have been successfully tried on a class-wide basis through representative testimony from Class Members,

---

[8] Before the *Dilts* decision, courts held that the FAAAA preempted state law regarding meal and rest breaks. For example, in *Burnham v. Ruan Transp.*, Case No. SACV 12-0688 AG (ANx), 2013 WL 4564496 (C.D. Cal. Aug. 16, 2013), a California federal district court granted a defendant's motion for summary judgment based on FAAAA preemption in a case where the plaintiff-drivers alleged minimum wage claims for unpaid non-driving time that were identical to Plaintiff's claims asserted in the instant case.

[9] The Hours of Service provide that "driving is not permitted if more than 8 hours have passed since the end of the driver's last off- duty or sleeper-berth period of at least 30 minutes." 49 C.F.R. § 395.3(a)(3)(ii)

management testimony, statistical sampling, expert testimony, and company documents, including the company DOT logs showing each Class Members' hours worked in and out of Washington State, and McLane's compensations policies. Hammond Decl., ¶ 27. Plaintiff also pointed to certified classes in other meal and rest break claims including *Demetrio*, 183 Wash. at 652; *Pellino v. Brink's, Inc.*, 164 Wash. App. 668, 682-84 (2011); and *Slack v. Swift Transportation Co. of Arizona, LLC*, 2013 WL 6095548 (W.D. Wash. 2013).[10] However, Plaintiff also recognizes that such procedures raise difficult management and proof issues and, accordingly, there is a risk that the Court may have denied class certification or, if it initially certified the class, later decertified it if the trial procedures appeared to become unmanageable. Hammond Decl., ¶ 27.

### iii. Risk of Losing on the Merits

McLane asserted several defenses on the merits. First, Defendant alleged that Class Members received separate and hourly "Delay" pay for their non-productive time meaning that Class Members were compensated for time spent on rest breaks. Hammond Decl., ¶ 28. Second, Defendant alleged that it provided a mechanism through which Class Members could request, and receive, additional pay. Id. Third, Defendant alleged that any rest breaks incurred outside of Washington State are not compensable, because Washington state law does not apply out of state.[11] Id. Because over 50% of the rest breaks would occur while Class Members were working outside of Washington, this effectively reduces the maximum damages by 50% of the Class Period. Id.

[10] In *Slack v. Swift*, the plaintiff sought to certify a class consisting of all current and former Washington employee interstate drivers who were paid on a piece-rate, who worked in excess of forty hours per week, and who participated in defendant Swift's new driver orientation program.  The district court certified the class, in part, to include, those drivers who had worked over forty hours per week and who had participated in the orientation program. *Id*. at * 5.  The court found that there were common issues of law and fact as to the orientation class. *Id*. at *4.  As to the overtime claims, the court disagreed with defendant Swift that liability for overtime could not be established on a class-wide basis and stated "an individual inquiry as to each member's hours does not eviscerate the common question of law as to the [Minimum Wage Class]." *Id*

[11] Plaintiff relied on *Bostain v. Food Express, Inc.*, 159 Wash. 2d 700, 713 (2007) in which the Washington Supreme Court held that Washington's overtime statute covers hours worked both within and without Washington by a Washington-based employee. Defendant argued that *Bostain* does not bind this Court in light of the Ninth Circuit's recent decision in *Sam Francis Found. v. Ebay, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2016).

15

As to Plaintiff's overtime claims, Defendant asserted (1) that Class Members are not entitled to overtime because they received their rest breaks, albeit unpaid ones, so this time is not compensable at the overtime rate; and (2) under Washington law, Class Members are not entitled to overtime pay under RCW 49.46.130(2)[12] because Class Members' effective hourly rate is "reasonably equivalent" to the overtime rate required under Washington law. Hammond Decl., ¶ 29.

McLane further argued that *even if* it did fail to pay separately and hourly for rest breaks, damages would only accrue from the date the *Sakuma* decision was issued, i.e., July 16, 2015, because up to that point Washington law was unsettled as to piece-rate workers rest breaks.[13] Hammond Decl., ¶ 30. This effectively reduces the maximum damages by 50% of the Class Period.  Id.

### iv.  Double Damages Defenses

McLane argued that it cannot be held liable for double damages for two reasons. First, double damages are not recoverable where there is a "bona fide dispute as to the obligation of payment," and prior to the date the *Demetrio* decision was issued, Washington law was unsettled as to piece-rate workers rest breaks. Hammond Decl., ¶ 32; *Wingert v. Yellow Freight Systems, Inc.*, 146 Wash. 2d at 848. Second, Class Members agreed to Defendant's compensation scheme and cannot now avail themselves of double damages under RCW 49.52.070.[14] Hammond Decl., ¶ 32.

---

[12] "An individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act (49 U.S.C. Sec. 3101 et seq. and 49 U.S.C. Sec. 10101 et seq.), if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week."

[13] As discussed above, Plaintiff alleged that Washington law was settled prior to *Sakuma* because the "only <u>reasonable</u> interpretation" for the applicable regulation, WAC 296-131-020(2), "requires pay [for rest breaks] separate from the piece rate." *Demetrio*, 183 Wash. 2d at 656 (emphasis in original).  Furthermore, the Supreme Court in *Sakuma* ruled that three opinions, each of which was decided prior to the liability period in this action, "*Wingert, Sacred Heart,* and *Pellino* – applied rest breaks paid on the employee's time to hourly workers [and] they guide our analysis." *Demetrio*, 183 Wash. 2d at 658.

[14] "…the benefits of this section shall not be available to any employee who has knowingly submitted to such violations."

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

### v.   Remaining Defenses

Defendant asserted that because Plaintiff's third and fourth causes of action (for inaccurate wage statements and failure to pay wages) are entirely derivative of the first cause of action, the same defenses apply. Hammond Decl. ¶ 33.

### c.        The Settlement Represents 73% of Plaintiff's Rest Break Damages

The $775,000 settlement amount represents **73%** of McLane's maximum exposure of $1,060,682 for unpaid rest breaks claims. Id. ¶ 35. Furthermore, the $775,000 settlement value represents **24%** of McLane's maximum exposure of $3,182,048 for all claims (assuming Plaintiff were to prevail on class certification and all liability determinations), which is reasonable given that over 2/3 of this maximum exposure figure is attributable to overtime and double damages claims. Id. ¶ 35. This analysis demonstrates that the settlement is adequate and unquestionably reasonable. Id. ¶ 36.  A spreadsheet detailing Plaintiff's analysis is attached as **Exhibit 2** to the Hammond Decl.

Moreover, it is well established that settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair.  *See Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 628. Accordingly, district courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30 % of the damages estimated by the class expert; court noted that even if the plaintiffs were entitled to treble damages that settlement would be approximately 10% of the estimated damages); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of 1/6, or 16.67%, of the potential recovery to be fair under the circumstances).

Here, the recovery amount represents 73% of the maximum unpaid wages (excluding overtime and penalty claims) that Plaintiff contends are owed to the Settlement Class, and represents an excellent result in light of the litigation risks, uncertainties, and delays. *See,*

17

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

Hammond Dec. ¶¶ 34-36.

**d.    The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Reasonable, and Adequate.**

The Parties engaged in an exchange of substantive information relating to Class Members' business expense claims as detailed above. Based upon the record that was developed through this investigation and informal discovery process, which included highly relevant class data from Defendant, five sworn declarations from Class Members, and employee handbooks and job descriptions provided by Plaintiff, Plaintiff's Counsel were able to realistically estimate class damages and assess the risks of further litigation. Hammond Decl. ¶¶ 11; 13-15; 19. It was only after the Parties investigated and evaluated the strengths and weakness of the case, attended a full-day mediation with Judge Infante, and engaged in hard-fought negotiations over the following several months, that the settlement was completed. Id. ¶ 16-17. This litigation, therefore, has reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement.  *See Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

**e.    The Settlement was the Product of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining as it was here.  *See Hanlon,* 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); see also *Hughes v. Microsoft Corp.,* No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery"). As the United States Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that

18

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

parties of equal knowledge and negotiating skill agreed upon the figure through arms- length bargaining…" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

Here, the Settlement was a product of intensive, adversarial litigation between the Parties. Notably, the Parties spent months prior to the mediation session developing the factual record for this case, drafting detailed mediation briefs, and ensuring both sides were fully informed about the strengths and weaknesses of their respective positions. Hammond Decl. ¶ 14-15. The Parties then attended a full-day mediation session before an experienced and well-respected mediator, and spent months following the mediation negotiating a settlement. Id. ¶ 15-17. In addition, the Parties are represented by skilled and experienced counsel. Plaintiff's Counsel has extensive background in complex litigation and experience litigating and settling similar wage and hour class actions. Id. ¶¶ 6-9.  Barry Goldstein also acted as Class Counsel's settlement consultant. Id. ¶ 16. Mr. Goldstein is a nationally acclaimed employment class action attorney with more than 35 years of experience practicing employment law. Id. These factors support a finding that the Settlement is fair, reasonable, and adequate.

### f. <u>The Proposed Notice and Claims Process Are Reasonable.</u>

In order to protect the rights of absent class members, courts must provide the best notice practicable of a potential class action settlement.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).  The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner.  It does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The Notice (Exhibit A to the Settlement Agreement) informs the Settlement Class Members about the terms of the Settlement and will contain a computation of each Settlement

19

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

Class Member's estimated individual settlement award, the underlying weeks worked used for that computation, and information about the procedure by which the Settlement Class Member may challenge the date. The Notice informs Settlement Class Members of the date and location of the final approval hearing. The Notice further explains that if the Settlement Class Members wish to object to the Settlement, they must notify the Settlement Administrator in writing, must notify the Court and counsel for the Parties in writing of their intention to appear and object at the final approval hearing, and informs them of the deadline for doing so.  Finally, the Notice informs Settlement Class Members of their right to opt out of the Settlement and the process for doing so by submitting a statement of his or her election not to participate in the class action, and informs them of the deadline for doing so.  Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement notice disseminated under authority of the Court.

In addition, the procedures surrounding the dissemination of the Notice ensure it will go out to Settlement Class Members in the manner best calculated to ensure that they are alerted to the terms of the Settlement and provided with the opportunity to respond to it. Within fifteen (15) business days of preliminary approval, McLane will provide the Settlement Administrator with the names, most current mailing addresses, Social Security numbers, and the start and end dates of working as a Class Member for Defendant – all as contained in McLane's records – for each Settlement Class Member. SA ¶ 25.

The Settlement Administrator will perform address updates and verifications prior to the mailing of the Notice to the Settlement Class. Id. Within ten (10) business days of receiving the Class list, the Settlement Administrator will mail the court-approved Notice of Class Action Settlement to all identified Settlement Class Members via first-class regular U.S. Mail. SA ¶ 26. If a Notice is returned because of an incorrect address, the Settlement Administrator will conduct a skip trace search for a more current address for the Class Member and re-mail the Notice to the Settlement Class Member.  SA ¶ 16.

20

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

Because the Settlement Class Members are McLane's current and former employees, notice in this matter is simpler than in other types of class actions. The proposed notice plan, calling for first-class mailed notice to all Settlement Class Members, meets constitutional standards and should be approved. *See, e.g.*, *Lewis*, 2008 WL 4196690, at *5 ("Notice by mail is sufficient to provide due process to known affected parties.").

## VI.   REQUESTED ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE AWARDS ARE FAIR AND REASONABLE.

In class actions, the Court may award reasonable attorneys' fees and costs that are authorized by law or the parties' agreement. See Fed. R. Civ. P. 23(h) . Here, Plaintiff's counsel are entitled to recover their attorneys' fees and costs for their wage claims under Washington law. See RCW 49.46.090 (employee who recovers for violations of minimum wage and overtime laws is entitled to "costs and such reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070 (employer who willfully withholds wages "shall be liable in a civil action . . . for twice the amount of wages unlawfully [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees"). The fee award requested by Class Counsel "is the product of an agreement reached through arm's-length bargaining, including the involvement of a mediator, by negotiating counsel experienced in similar litigation" and is therefore fair and reasonable. *Bobowski v. Clearwire Corp.*, 2012 U.S. Dist. Ct. Motions LEXIS 25465 at *9 (Nov. 8, 2012). Further, Defendant does not oppose this request. SA ¶ 13.

Where counsel to a class action seek fees from the common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Plaintiff's counsel's request for fees is reasonable under either analysis.

Here, Plaintiffs' Counsel seek an award of 33% of the common fund for their attorneys' fees – a percentage routinely awarded by the courts. See *Dennings v. Clearwire Corp.*, No. C10-

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

1859JLR, 2013 U.S. Dist. LEXIS 64021 (W.D. Wash. May 3, 2013) (granting request for 35.78% fee); *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.,* 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir.2000) (same); Hammond Decl. ¶ 48. Notably, the requested percentage of the fund is in line with the fee that Class Counsel would have expected if they had negotiated individual retainer agreements with each Class Member. Hammond Decl. ¶ 47. Such an award ensures that Class Counsel receive an appropriate fee award for the actual benefit conferred to the Class, particularly where it would impossible *ex ante* to enter a fair fee arrangement with all the members of the Class.  Because this Settlement is a non-reversionary, fixed fund where the full $775,000 fund will be paid out by Defendant and approximately $486,666 will be distributed to the participating Class Members, with any residual donated to the Washington State Department of Revenue Unclaimed Property Fund, and because the individual recovery amounts that will be paid to Class Members from the Net Settlement Amount are ample, the requested fee represents fair compensation to Class Counsel for obtaining an excellent result for the Class despite undertaking complex, risky, and expensive litigation on a contingent basis. Id. ¶ 38-41; SA ¶ 24.

Further, the requested fee award represents a modest multiplier of only 1.7 to Plaintiffs' Counsel's lodestar to date, which is also well within the range approved by the Courts. See *Bobowksi v. Clearwire,* 2012 U.S. Dist. Ct. Motions LEXIS 25465 at* 21 ("Courts in the Ninth Circuit, including in this District, have found that multipliers ranging up to four are frequently awarded in common fund cases"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (affirming a multiplier of 3.65 based on a survey of 24 lodestars awards, with 83% most ranging from 1.0-4.0 and a bare majority (54%) in the 1.5-3.0 range); see also Newberg on Class Actions § 14:03 (3d ed. 1992) (multipliers of 1 to 4 are frequently awarded); Hammond Decl. ¶ 42, Ex. 3. A multiplier of 1.7 is appropriate given the excellent result obtained for the Class. Hammond Decl. ¶ 49. Further, this amount does not include the substantial amount of time

22

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF STIPULATED CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-05303-BHS

HAMMONDLAW, P.C
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208; Tel: 310-601-6766

1    Plaintiffs' Counsel expects to expend in the remainder of the proceedings.[15] Id.

2         Plaintiff's Counsel further request reimbursement of actual litigation costs up to $15,000.

3    "Attorneys may recover reasonable expenses that would typically be billed to paying clients in

4    non- contingency matters." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Plaintiff's

5    Counsel has incurred actual costs of $13,291.28 (including $1,000 in prospective costs to be

6    incurred during the approval process). Hammond Decl. ¶ 51 and Ex. 4. Plaintiff's Counsel have

7    reasonably incurred these costs during the course of litigating this case and will continue to incur

8    additional expenses throughout the settlement approval, implementation, payment, and reporting

9    process.

10        **A.   The Class Representative Service Award Is Reasonable.**

11        "[I]ncentive awards that are intended to compensate class representatives for work

12   undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779

13   F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d at 958. "The

14   district court must evaluate their awards individually, using 'relevant factors including the actions

15   the plaintiff has taken to protect the interests of the class, the degree to which the class has

16   benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in

17   pursuing the litigation…" *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003). A $5,000

18   Enhancement Award is "well within the usual norms of 'modest compensation' paid to class

19   representatives for services performed in the class action." *In re Online DVD*, 779 F.3d at 94

20   (quoting *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1080 (7th Cir. 2013) and noting that

21   "we approved an identical incentive fee in *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463

22   (9th Cir.2000).

23        Here, the proposed Enhancement Award of $5,000 to the named Plaintiff is in recognition

24   of his substantial service to, and efforts on behalf of, the proposed Settlement Class. Plaintiff

25

26   _____
     [15] Prior to final approval, Plaintiffs' counsel will file a separate motion for an award of attorneys' fees and costs,
27   addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

                                                   23
28   UNOPPOSED MOTION FOR PRELIMINARY APPROVAL                          HAMMONDLAW, P.C
     OF STIPULATED CLASS ACTION SETTLEMENT                       1829 REISTERSTOWN RD., SUITE 410
     CASE NO. 3:16-cv-05303-BHS                                  BALTIMORE, MD 21208; Tel: 310-601-6766

greatly assisted Plaintiff's counsel in investigating the claims, providing Class Counsel with relevant documents and class member contact information, preparing the complaint, contacting additional witnesses, traveling from Washington to San Francisco to attend the full-day mediation, and reviewing the settlement agreement.[16] *See* Declaration of Steven Eilerman, filed herewith. Defendant does not oppose this request. SA at ¶ 14. The proposed Enhancement Awards of $5,000 for the Named Plaintiff is therefore fair and reasonable.

## VII. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Once a class action settlement is preliminarily approved, the court may schedule a noticed final fairness hearing "at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see* 4 Newberg on Class Actions § 11.25 (4th ed. 2012). Plaintiff requests that the hearing be scheduled to allow sufficient time for any Class Members to opt-out or object to the Settlement.

## VIII. CONCLUSION

For the foregoing reasons, the Court should (1) grant preliminary approval to the Settlement Agreement; (2) conditionally certify Plaintiffs' proposed Settlement Class; (3) appoint Plaintiff and his counsel as Class Representatives and Class Counsel respectively; (4) approve and direct the mailing of the proposed Notice plan; and (5) schedule a hearing for final approval of the Settlement.

Respectfully submitted,

By:     /s/ Julian Hammond
JULIAN HAMMOND (*pro hac vice*)
HammondLaw, PC
1829 Reisterstown Road, Suite 410
Baltimore, MD  21208
ATTORNEYS FOR PLAINTIFF

---

[16] Prior to final approval, Plaintiffs' counsel will file a separate motion for an award of attorneys' fees and costs, including a discussion of the facts and law supporting Plaintiff's requested Enhancement Award in light of all of the relevant facts.